IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-108-D
No. 5:25-CV-653-D

| | | |
|---|---|---|
| TERRY A. FREDERICK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On October 14, 2025, Terry A. Frederick ("Frederick" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for possession of a firearm by a felon and his 180-month sentence [D.E. 100] and filed a supporting memorandum [D.E. 101]. On December 18, 2025, the United States moved to dismiss Frederick's section 2255 motion [D.E. 105] and filed a supporting memorandum [D.E. 106]. On December 19, 2025, the court notified Frederick that he had until January 11, 2026, to respond [D.E. 107]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Frederick failed to respond. As explained below, the court grants the United States' motion, dismisses Frederick's section 2255 motion, and denies a certificate of appealability.

I.

On May 9, 2025, with a written plea agreement, Frederick pleaded guilty to possession of a firearm by a felon. See [D.E. 50, 52, 53]; Rule 11 Transcript ("Rule 11 Tr.") [D.E. 81] 3–29. At the Rule 11 hearing, Frederick and the court engaged in a comprehensive Rule 11 colloquy. The court confirmed Frederick's competency, the charge, the penalties, Frederick's constitutional

rights, and that he negotiated a plea agreement with the United States. See Rule 11 Tr. 3–20. Frederick confirmed that he was "completely and fully satisfied with the representation [he] received from [his] attorney." Id. at 23.

The court also discussed the plea agreement with Frederick. The court confirmed that Frederick read the plea agreement and discussed it with his attorney. See id. at 20. The court also confirmed that Frederick understood he was "giving up [his] right to appeal or otherwise challenge [his] conviction or sentence on any ground other than ineffective assistance of counsel or prosecutorial misconduct." Id. at 21.

The court discussed the sentencing process with Frederick. The court explained that at the sentencing hearing, the court would calculate an advisory guideline range and would consider the advisory guideline range, any departure motions, any variance motions, counsels' arguments, the 18 U.S.C. § 3553(a) factors, and Frederick's allocution in imposing a sentence. See id. at 5. Frederick confirmed that he understood. See id. at 18.

The court also discussed the Presentencing Investigation Report ("PSR"). The court explained that, before sentencing, the United States Probation office would draft the PSR and that Frederick could object to the PSR. See id. at 7–8.

The court explained the elements of the felon in possession of a firearm charge to Frederick. See id. at 24. The United States then offered a factual basis for the guilty plea. See id. at 25–27. Frederick then pleaded guilty to the charge, and the court accepted Frederick's guilty plea and adjudged him guilty of being a felon in possession of a firearm. See id.

On June 24, 2024, probation filed a draft PSR. See [D.E. 54]. On September 5, 2024, Frederick filed objections to the draft PSR. See [D.E. 60]. Frederick objected to (1) the four-level

enhancement "for use or possession of a firearm or ammunition in connection with another felony offense," (2) the six-level enhancement "for creating risk of serious bodily injury [while] knowing or having reasonable cause to believe that a person was a law enforcement officer, and assaulting such officer during the course of the offense or immediate flight therefrom," and (3) the two-level enhancement "for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." Id. at 1–2. On November 11, 2024, Frederick filed a sentencing memorandum and moved for a downward variance. See [D.E. 68] 1, 6–9. On November 21, 2024, Frederick moved to withdraw his guilty plea. See [D.E. 67].

On November 25, 2024, the court held Frederick's sentencing hearing. The court discussed Frederick's motion to withdraw his guilty plea. See Sentencing Transcript ("Sent. Tr.") [D.E. 91] 4–8. Frederick then withdrew his motion. See id. at 8–10. The court confirmed Frederick had discussed the PSR with his counsel and considered Frederick's objections to the PSR. See id. at 11–38. An ATF agent testified about the facts underlying the enhancements. See id. at 12–19. Frederick's counsel cross-examined the agent. See id. at 12–26. The court then asked Frederick if he wanted to present evidence. See id. at 26–27. Frederick declined. See id. Counsel then argued whether the enhancements applied. See id. at 27–35. The United States agreed that the third enhancement did not apply, and the court sustained the third objection. See id. at 33. The court then overruled the first and second objections and explained its findings. See id. at 35–38. The court calculated Frederick's advisory guideline range as 180 months' imprisonment. See id. at 38.

The court heard arguments about the section 3553(a) factors from counsel, and Frederick allocuted. See id. at 38–51. After considering all relevant factors under section 3553(a), counsels'

arguments, and Frederick's allocution, the court sentenced Frederick to 180 months' imprisonment. See id. at 52–58.

On November 25, 2024, the court issued its judgment. See [D.E. 71]. On December 11, 2024, Frederick appealed his sentence. See [D.E. 73]. On January 29, 2025, the court issued an amended judgment. See [D.E. 92]. On March 7, 2025, Frederick moved to correct the amended judgment to show dismissal of count one. See [D.E. 93]. That same day, the court granted Frederick's motion. See [D.E. 94] 1. The court amended the judgment to show count one's dismissal. See [D.E. 93] 1–2; [D.E. 95] 1.

On May 22, 2025, the United States Court of Appeals for the Fourth Circuit dismissed Frederick's appeal. The Fourth Circuit found that "Frederick knowingly and voluntarily waived his right to appeal and that the issues Frederick . . . raise[d] on appeal [fell] squarely within the scope of his waiver of appellate rights." [D.E. 96] 1–2.

On October 14, 2025, Frederick moved under section 2255 to vacate, set aside, or correct his sentence. See [D.E. 100]. Frederick argues that (1) the district court erred when it applied a six-level enhancement for assaulting a law enforcement officer during Frederick's offense, (2) the district court erred when it applied a sentence enhancement for possessing a firearm in connection with another offense, (3) the district court erred when it applied a two-level "enhancement for fleeing from law enforcement which created a substantial risk of death or serious bodily injury," and (4) his counsel was ineffective by failing to object to the enhancements. Id. at 4–8. Liberally construed, Frederick also argues judicial misconduct and that his counsel was ineffective because she misled him. See [D.E. 101] 2. On December 18, 2025, the United States moved to dismiss Frederick's section 2255 motion. See [D.E. 105]. Frederick failed to respond in opposition.

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd ., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United

States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Frederick must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether

an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

"Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would of pleaded but for his attorney's deficiencies." Id. at 369. "Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

A.

As for Frederick's claims about the sentencing enhancements, a defendant can waive "the right to attack a sentence collaterally . . . so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Frederick waived his "right to appeal the conviction and whatever sentence is imposed on any ground, including any appeal [under] 18 U.S.C. § 3742, and further to waive any right to contest the conviction or the sentence in any post-conviction proceeding, including any proceeding under [section] 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct" in his plea agreement. [D.E. 52] ¶ 2c. At Frederick's Rule 11 hearing, Frederick confirmed that he

understood the appellate waiver. See Rule 11 Tr. 21. At Frederick's sentencing, the court accepted the plea agreement, which Frederick knowingly and voluntarily entered. See Sent. Tr. 8–10. Thus, Frederick's claims fail. See United States v. Yelizarov, 140 F.4th 597, 605 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); Lemaster, 403 F.3d at 220.

Alternatively, Frederick cannot "circumvent a proper ruling on . . . direct appeal by re-raising the same challenge in a [section] 2255 motion." Dyess, 730 F.3d at 360; United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); see Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Frederick raised the claims about the first two sentencing enhancements on direct appeal. See [D.E. 100] 2. The Fourth Circuit dismissed Frederick's direct appeal. See [D.E. 96] 1–2. Thus, Frederick's claims about the first two sentencing enhancements fail. See Dyess, 730 F.3d at 360; Linder, 552 F.3d at 396; Boeckenhaupt, 537 F.2d at 1183.

Alternatively, Frederick cannot use section 2255 to attack his advisory guideline range retroactively. See, e.g., United States v. Foote, 784 F.3d 931, 935–36 (4th Cir. 2015); United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999). Thus, Frederick's claims fail. See Foote, 784 F.3d at 935–36; Pregent, 190 F.3d at 283–84.

As for Frederick's claim about the two-level enhancement, the court sustained Frederick's objection to that enhancement, and the enhancement was not a factor in Frederick's advisory guideline range. See Sent. Tr. 33, 38. Thus, Frederick's claim fails. See Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 677–78; Twombly, 550 U.S. at 555–63, 570; Coleman, 626 F.3d at 190l; Giarratano, 521 F.3d at 302.

B.

Frederick alleges that his counsel failed to object to the three enhancements and thereby rendered ineffective assistance. See [D.E. 100] 8. Frederick's counsel, however, objected to the three enhancements, and the court sustained the third objection. See [D.E. 60]; [D.E. 68] 6–9; Sent. Tr. 11–33.

Frederick fails to cite "specific errors made by" his counsel. United States v. Cronic, 466 U.S. 648, 666 (1984). Thus, Frederick's claim fails as to performance and prejudice. See, e.g., Strickland, 466 U.S. at 687–96; Brown v. French, 147 F.3d 307, 313 (4th Cir. 1998).

C.

On November 25, 2024, the court issued its judgment in Frederick's case. See [D.E. 71]. The judgment showed that the court adjudged Frederick guilty of count two and dismissed count one. On January 25, 2024, the court issued an amended judgment that did not show count one as dismissed. See [D.E. 92] 1. On March 3, 2025, Frederick's counsel moved to amend the judgment to show that the court dismissed count one. See [D.E. 93] 1–3. On April 2, 2025, the court issued a second amended judgment that showed that the court dismissed count one. See [D.E. 95] 1.

Frederick alleges judicial misconduct because there was an additional "charge that was not in [his] plea-agreement" in the amended judgment. [D.E. 101] 2. Additionally, Frederick alleges judicial misconduct because there was a pagination error and the second amended judgment listed the original judgment date instead of the first amended judgment date. See id.; [D.E. 101-1] 4.

Frederick procedurally defaulted his judicial misconduct claim. In his appeal, Frederick only challenged the sentencing enhancements. See [D.E. 100] 2. Section 2255 "imposes tight procedural constraints" on the scope of a movant's claims. Fernandez v. United States, 146 S. Ct.

1292, 1300 (2026). "[C]laims not raised on direct review are procedurally defaulted unless the prisoner can demonstrate cause and prejudice, or else actual innocence." Id. (cleaned up); see Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); Fugit, 703 F.3d at 253; United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Frederick did not raise his judicial misconduct claim on direct appeal. Thus, the claim fails.

Alternatively, the alleged conduct is not judicial misconduct. See, e.g., Liteky v. United States, 510 U.S. 540, 555–556 (1994). Thus, Frederick's claim fails.

Frederick alleges ineffective assistance of counsel because his counsel told him that the amended judgment errors "did not make a difference." [D.E. 101] 2. Frederick has failed to plausibly allege deficient performance or prejudice. Frederick's counsel promptly asked the court to fix the amended judgment. See [D.E. 93] 1–2. And Frederick's counsel alerted him to the second amended judgment's date and pagination errors and correctly told him that they had no effect. See [D.E. 101-1] 4. Thus, Frederick's claim fails. See Strickland, 466 U.S. at 687–97.

D.

The court finds that reasonable jurists would not find the court's treatment of Frederick's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 105], DISMISSES petitioner's motion to vacate, set aside or correct petitioner's sentence [D.E. 100], and DENIES a certificate of appealability.

SO ORDERED. This 14 day of September, 2026.

JAMES C. DEVER III
United States District Judge